THOMAS A. O'DONNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35341.   Promulgated March 23, 1932.

*Thomas R. Dempsey, Esq.*, and *A. Calder Mackay, Esq.*, for the petitioner.

*Alva C. Baird, Esq.*, for the respondent.

958

## OPINION.

VAN FOSSAN: Respondent admitted error in his original determination of a deficiency, but by second amended answer raised an issue as to the taxability to petitioner of payments made to the trustee of the two trusts created by him. Both trusts were expressly subject to revocation by the settlor and petitioner apparently does not seriously contend that the income, if any was earned in 1923, was not income to him, but maintains that the respondent has failed to prove the payments constituted income.

Respondent's allegation is that the fair market value of the rights acquired by the petitioner by virtue of the contract of January 9, 1918, with Midway, i. e., the right to receive one-third of the future profits of Midway from the property in question, did not exceed $75,000 on the date of acquisition and that he or his nominees had received the sum of $413,672.14 under such contract prior to 1923.

The transaction of January 9, 1918, by the terms of which the petitioner transferred to Midway his one-third stock interest in San Gabriel and options on the remaining two-thirds of such stock in consideration of receiving one-third of the future profits of Midway was not a closed transaction on which gain arose on the contract date. It was a sale of property which might or might not give rise to income, dependent on the inscrutable factor of future oil production.

If and when petitioner had received back his capital cost or basis, income would begin to accrue. If such cost were never recovered no income would ever arise. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. Petitioner reported his income on a cash basis and is required to return income for taxation only when the profit is realized. The promise to pay one-third of future profits was not equivalent to cash nor did it have, on January 9, 1918, an ascertainable fair market value. *Burnet* v. *Logan*, 283 U. S. 404.

Nor do we deem it proper to find a fair market value as of January 9, 1918, by employing as a basis the subsequent profits. Such profits might serve as corroborative of the reasonableness of a figure of value if such were ascertainable as of the basic date. But no value of the right being ascertainable on that date, the subsequent returns will not be looked to to determine the same.

This is not, however, an end of the matter. Though respondent may have been mistaken in assuming that a fair market value could be determined as of January 9, 1918, we have the further problem of determining whether petitioner had recovered the cost or value of the stock and options prior to the close of the taxable year. It is stipulated that petitioner, or the trustee of the revocable trusts created by him, received from the Midway Company between January 9, 1918, and December 31, 1922, the sum of $413,672.14 on account of the contract of January 9, 1918, and that in 1923 the further sum of $114,908.31 was so received. As we have indicated, if he had recovered the cost or basis of the property sold, the payments received in 1923 constituted income. To solve this further problem it is necessary to look back of the transaction of January 9, 1918, to the date of acquisition of the stock and options and, if possible, determine their cost or value, whichever is the appropriate base.

Under date of June 28, 1917, petitioner acquired one-third of the stock of San Gabriel Company by transferring to that company his undivided one-third interest in certain oil leases. At the same time the two McCrays received one-third each of the stock for their interests in the leases. These leases had been acquired for a nominal consideration.

Under the revenue act then in force the transaction of June 28, 1917, was a taxable transaction and thereafter the basis for determining gain on disposition of the stock was the fair market value of the same when received. Since all of the stock was exchanged for the leases, and there being no evidence of any other assets, we believe it reasonably inferable that the stock had no greater value than the leases. These leases had been acquired during March of the same year. The facts do not indicate that any development had been undertaken or production achieved prior to June 28, 1917, when the leases were transferred to San Gabriel Company.

Six months later, on January 7, 1918, the two McCrays sold their stock for a net price of $75,000 to each, the Midway Company assuming all obligations of San Gabriel Company and undertaking to save the sellers harmless therefrom. In the option given petitioner on M. L. McCray's stock mention is made of a note due the Farmers & Merchants National Bank, while in the option from L. A. McCray specific mention of a note for $45,000 due "the bank" is made. That these references are to the same note seems clear to us. There is no other evidence from which we are led to believe that the liabilities assumed by Midway were in a large amount and in any event it seems apparent that all of these liabilities, including the note for $45,000, were incurred by the San Gabriel Company subsequent to June 28, 1917, the date when petitioner acquired his stock. If, however, they were in existence at the last mentioned date they would not serve to increase the value of the stock then acquired by petitioner.

In addition to his one-third stock interest petitioner sold on January 9, 1918, the two options on the remaining two-thirds of such stock held by the McCrays. One of these options recites no consideration while the other states one dollar as consideration. The first of these options was acquired on December 24, 1917, and the other on December 31, 1917. They were sold and transferred a few days later—on January 9, 1918. Since the options were so acquired, their cost is the basis for determining gain on disposition. Having been acquired at nominal cost, they add nothing to the aggregate amount to be used as a base on their subsequent sale with the stock. We are thus thrown back on the fair market value of the stock on June 28, 1917, as the ultimate base for determining profit.

The record in this case is incomplete in many respects. The facts were stipulated, and we have no opinion evidence such as is usually presented in valuation cases. On such facts as we have before us, and making such reasonable inferences of fact therefrom as seem justified, does it appear that by the end of 1922, when petitioner or his nominees had received $413,672.14, he had recovered the fair market value of the stock and cost of the options sold January 9, 1918? Though it is impossible on the record to determine exactly the fair market value of petitioner's stock on June 28, 1917, we are satisfied that it, together with the cost of the options, was less than $413,672.14, the amount paid on account thereof by Midway Company prior to January 1, 1923, and we do so find. It follows that previous to the taxable year petitioner had received the fair market value or cost of the property sold by him on January 9, 1918, and that all sums received in 1923 constituted taxable income.

*Decision will be entered under Rule 50.*